## Marine National Bank of Erie et al. *v.* Johnson Lumber Company.

Argued September 28, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Gerald A. McNelis,* and with him *Reed and Spofford,* for appellant.

*William J. Dale,* and with him *Harold F. Mook,* for appellee.

OPINION BY CUNNINGHAM, J., February 1, 1934:

The record returned in obedience to the certiorari issued upon this appeal is so meager that it is impossible for us to ascertain the basis for a number of statements of fact made by counsel.

Appellant, Consumers' Supply Company, was the highest bidder for certain quantities of lumber, builders' supplies, paint, etc., offered piecemeal at a public sale by the receiver of Johnson Lumber Company, and now complains that the court below erred, (a) in refusing to confirm the sale to it of the articles for which its bids were the highest, and, (b) in directing a private sale thereof to certain individuals, who were also bidders at the public sale, when they subsequently offered prices higher than those bid by appellant.

From the record, we gather the following history of the proceeding:

On November 11, 1932, the court below entered a decree, upon a bill filed by The Marine National Bank of Erie and Erie Trust Company against The Johnson Lumber Company, appointing Carl G. Wright receiver of the latter; it was engaged in the business of selling lumber, builders' supplies, paints, hardware,

etc., and the personal property here involved was appraised at $8,300.

On January 12, 1933, the receiver was ordered to expose the stock of merchandise, supplies, etc., at public auction, the sale, or sales, to be subject to confirmation by the court. The receiver, on February 13, 1933, presented his petition, setting forth, inter alia, that he had conducted a public sale of the property; that on piecemeal bids for the hardware, lumber and builders' supplies, paints and brushes, with which we are concerned, he had been offered $6,287.81; and praying for an order confirming the sales and authorizing him to deliver the merchandise to the respective purchasers. A rule was granted upon the petition, of the receiver, returnable February 27, 1933, to show cause why the sales should not be confirmed, etc.

At the sale a representative of The Consumers' Supply Company, appellant herein, bid on sundry articles, including doors, windows, lumber, hardware, and paint, the aggregate sum of $2,014.12; these items were knocked down to appellant as the highest bidder therefor and its bids were included in the above total of $6,287.81.

On the same day the rule for confirmation was granted a petition was presented by H. C. Trask, George W. Kuerner and A. C. Hedderick, three of the two hundred and thirty bidders at the sale, in which they averred they were "ready, willing and able to pay [in cash] the lump sum or total of $6,500 for all of said items, or $212.19 over and above the highest and best bids received by the receiver," and prayed that the receiver be directed to accept their bid and to make the sale to them. Upon this petition the court granted a rule to show cause, also returnable February 27, 1933.

Although these rules were outstanding, the court, for some unexplained reason, confirmed, on February 14, 1933, the sales as returned by the receiver.

On February 18, 1933, Trask and his associates presented another petition increasing their bid to $7,000 thereby undertaking to pay $712.19 in excess of the bids received at the public sale. Upon this petition a rule was granted, returnable at the same time as the two previous rules, and the confirmation of the sales vacated.

Appellant answered the last mentioned petition, setting forth that it had bid $2,014.12 for a portion of the articles offered at the public sale; that it would be a breach of good faith with the bidders at that sale to refuse confirmation thereof; that the petitioners for a private sale had knowledge of the values of the articles offered for sale, and of the prices bid by appellant and others, "and yet failed to become purchasers thereof."

On March 2, 1933, the court below made absolute the rule to show cause why the private sale for $7,000 should not be approved, and directed the receiver to sell the merchandise to Trask, Kuerner and Hedderick for that amount. The receivership proceedings also included sales of certain real estate, trucks, office furniture, etc., with which we are not now concerned. The reasons assigned by the court below for thus directing a subsequent private sale to unsuccessful bidders at a public one, are contained in the following excerpt from its opinion:

"We can but state our reasons for the order of March 2, 1933. Unfortunately, no testimony has been taken and much of the information before the court does not appear of record.

"The unsecured debts of the corporation are in excess of $125,000 and the appraised value of property to which the creditors may look is less than $20,000. The total of all bids for the hardware, lumber and builders' supplies, paint, etc., at the public sale was $6,381.81 [including good will] as against an appraised

valuation of $8,300.50 for the same material. The appraised valuations are low. Trask's offer for this same merchandise at private sale was $7,000. The rule was granted and the former confirmation set aside in the hope that something more nearly adequate could be realized out of the property for the creditors either by a second public sale or otherwise. But at the time of the argument a second public sale seemed inexpedient for deposits in local banks in the meantime had been impounded. The receiver also reported that he had received notice from a number of bidders at the public sale that they would be unable to pay the balance of their bids because of this impounding of their funds. There were hundreds of these bidders and it seemed reasonable to assume that many of them would be similarly affected. Moreover, at the February term the holders of $225,000 in bonds of the defendant company had foreclosed on the real estate and had bid in the property. They reported that they had a tenant for part of the premises then occupied by the receiver in storing this material. They were entitled to possession at the earliest possible date. Under these circumstances, private sale for cash on Trask's petition for about seven hundred dollars in excess of the aggregate prior bids appeared to be the best way out of an unsatisfactory situation and accordingly the order was made.''

There is no suggestion of even the slightest irregularity in the manner in which the public sale was conducted, nor did Trask and his associates attempt any explanation of their failure to bid at that sale the amount they subsequently offered for the property knocked down to others as the result of a fair competition in which they participated. They were not entitled to any consideration and if the unprecedented banking situation, referred to in the opinion of the court, had not existed throughout the nation at the

time the rules were returnable and when the order was made, we would be most reluctant to affirm it.

The facts stated in the opinion are not controverted. In their light, we are not convinced we should hold that the making of the order appealed from amounted to an abuse of the discretion vested in the court below.

Order affirmed at the costs of appellant.